UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JUN 26 2019

Chief Judge Ruben Castillo
United States District Court

UNITED STATES OF AMERICA

    v.

GUADALUPE FERNANDEZ
VALENCIA

No. 09 CR 383-19

Chief Judge Rubén Castillo

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant GUADALUPE FERNANDEZ VALENCIA, and her attorney, RUBEN OLIVA, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The ninth superseding indictment in this case charges defendant with conspiracy to possess with intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Section 846 (Count One), conspiracy to import a controlled substance into the United States, in violation of Title 21, United States Code 963 (Count Two), and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Five).

3.    Defendant has read the charges against her contained in the ninth superseding indictment, and those charges have been fully explained to her by her attorney.

4.      Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the ninth superseding indictment: Count One, which charges defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute controlled substances, namely 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 846; and Count Five, which charges defendant with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

## Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charges contained in Counts One and Five of the ninth superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

2

     a.     With respect to Count One of the ninth superseding indictment:

Beginning no later than in or about 2009, and continuing until at least in or about December 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant GUADALUPE FERNANDEZ VALENCIA, did conspire with others known and unknown knowing and intentionally to possess with intent to distribute and distribute controlled substances, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

Specifically, in or about February 2007, FERNANDEZ moved to Culiacán, Mexico, after completing a 120-month federal prison sentence in the United States. In or about the beginning of 2009, FERNANDEZ agreed to begin helping her brother, Manuel Fernandez Valencia ("Manuel"), import cocaine into the United States from Mexico. FERNANDEZ assisted by coordinating the sale of Manuel's cocaine to two customers FERNANDEZ knew and had acquired. These customers took delivery of

the cocaine in the Los Angeles area. From early 2009 until mid-2010, Manuel and FERNANDEZ imported an average of 30 kilograms of cocaine per week to these customers. During this same period, Manuel and FERNANDEZ smuggled a total of approximately 3,500 pounds of marijuana into the United States.

While FERNANDEZ was assisting Manuel in smuggled cocaine and marijuana into the United States, FERNANDEZ occasionally saw and interacted with Individual A and Individual B. Based on her conversations with her brother, FERNANDEZ understood that Manuel worked with Individual A and Individual B to traffic cocaine, including by importing it into the United States.

In or about mid-2010, Manuel was arrested as a result of his narcotics-trafficking activities. Following her brother's arrest, in or about December 2010, FERNANDEZ moved her family to Guadalajara and temporarily stopped trafficking narcotics. In or about 2011, Manuel asked FERNANDEZ to coordinate a payment to Individual B, which FERNANDEZ did and, as a result, began communicating with Individual B. In or about 2011, Individual B advised FERNANDEZ that she and her family were not safe in Guadalajara. Individual B invited FERNANDEZ to return to Culiacán under his protection and to begin working under him by selling drugs he supplied. FERNANDEZ accepted the invitation and, shortly after Easter in 2012, she moved back to Culiacán with her family and began working under Individual B.

Between in or about mid-2012 and in or about August 2014, FERNANDEZ agreed to sell cocaine, marijuana, and methamphetamine that Individual B provided.

4

Individual B provided the narcotics to FERNANDEZ on credit and delivered the narcotics to FERNANDEZ's workers in Culiacán. FERNANDEZ then paid individuals to transport the narcotics into the United States by way of Tijuana, including through tunnels and hidden in vehicles.

FERNANDEZ received cocaine from Individual B approximately eight times, with the quantities of cocaine ranging between 30 kilograms and 80 kilograms at a time. Most of this cocaine was intended for FERNANDEZ's customers. Approximately three times, some of this cocaine was diverted to Individual B's customers once in the United States.

On two occasions, FERNANDEZ sold marijuana provided by Individual B to her customers. The first time was for 500 pounds and it went to Phoenix, Arizona. The second time was for 5,000 pounds and it went to Los Angeles. On two additional occasions, Individual B agreed to transport a total of approximately 4,000 kilograms of marijuana, which FERNANDEZ obtained from another source, into the United States for FERNANDEZ. However, on both occasions, the marijuana failed to enter the United States.

Finally, on one occasion, Individual B provided FERNANDEZ 50 pounds of methamphetamine ("ice") on credit, which she imported into the United States. These narcotics were ultimately seized in New Jersey in or about June or July 2014.

In addition to trafficking cocaine, marijuana, and methamphetamine with Manuel and Individual B as described above, between 2012 and 2014, FERNANDEZ

agreed with others to import at least 150 kilograms of heroin into the United States from Mexico.

      b.     With respect to Count Five of the ninth superseding indictment:

Beginning in or about 2009, and continuing until at least in or about December 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, FERNANDEZ, did conspire with others known and unknown to commit offenses in violation of Title 18, United States Code, Section 1956, namely, (1) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); (2) to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside of the United States with the intent to promote the carrying on of a specified unlawful activity, namely felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a

controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and (3) to transport, transmit, and transfer a monetary instrument and funds involving the proceeds of specified unlawful activity, namely, felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, from a place in the United States to or through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); all in violation of Title 18, United States Code, Section 1956(h).

Specifically, whenever FERNANDEZ trafficked narcotics into the United States as described above, FERNANDEZ coordinated the collection of the narcotics proceeds in the United States and the return of the narcotics proceeds to Manuel, Individual B, herself, and others in Mexico. FERNANDEZ accomplished this by having the cash narcotics proceeds delivered to stores in the Los Angeles area that had relationships with currency exchanges in Mexico, including currency exchanges located in Guadalajara. FERNANDEZ agreed to pay the currency exchanges 3% of the proceeds in order to have the currency exchange pay out in Guadalajara the

amount of narcotics proceeds deposited in Los Angeles (less the fee). FERNANDEZ would then have one of her workers retrieve the cash narcotics proceeds from the currency exchange in Guadalajara and deliver shares of the proceeds to Manuel, Individual B, herself, and others.

FERNANDEZ used this method to transport the narcotics proceeds from the United States to Mexico so that she and her fellow narcotics traffickers could purchase additional drugs to import into the United States. FERNANDEZ also used this method to transport the narcotics proceeds from the United States to Mexico in order to hide the fact that the money constituted narcotics proceeds.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8.     Defendant understands that the charges to which she is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $10,000,000. Defendant further understands that with respect to Count One the judge also may

8

impose a term of supervised release of at least five years up to any number of years, including life.

   b. Count Five carries a maximum sentence of 20 years' imprisonment. Count Five also carries a maximum fine of $500,000, or twice the value of the property involved in the transaction or transportation, whichever is greater. Defendant further understands that with respect to Count Five, the judge also may impose a term of supervised release of not more than three years.

   c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which she has pled guilty, in addition to any other penalty imposed.

   d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $10,500,000, or $10,000,000 and twice the value of the property involved in the transaction or transportation, whichever is greater, a period of supervised release up to and including life, and special assessments totaling $200.

## Sentencing Guidelines Calculations

  9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

9

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b.     **Offense Level Calculations.**

<u>Count One</u>

i.     The base offense level is 38, pursuant to Guideline § 2D1.1(a)(5) and 2D1.1(c)(1), because the total amount of cocaine involved in defendant's offense of conviction for which she is accountable is more than 450

kilograms or more than 90,000 kilograms of Converted Drug Weight, the total amount of heroin involved in defendant's offense of conviction for which she is accountable is more than 90 kilograms or more than 90,000 kilograms of Converted Drug Weight, the total amount of "ice" involved in defendant's offense of conviction for which she is accountable is more than 4.5 kilograms or more than 90,000 kilograms of Converted Drug Weight, and the total amount of marijuana involved in defendant's offense of conviction for which she is accountable is more than 8,000 kilograms or more than 8,000 kilograms of Converted Drug Weight. The total amount of Converted Drug Weight involved in defendant's offense of conviction for which she is accountable is at least 278,000 kilograms, which is more than 90,000 kilograms of Converted Drug Weight.

      ii.    Two levels are added to the offense level, pursuant to Guideline § 2D1.1(b)(5), because the offense involved the importation of amphetamine or methamphetamine and the defendant is not subject to an adjustment under Guideline § 3B1.2.

      iii.    Two levels are added to the offense level, pursuant to § 2D1.1(b)(16)(C) and (E), because the defendant was directly involved in the importation of a controlled substance and committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.

iv. Four levels are added to the offense level, pursuant to Guideline § 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants.

### Count Five

v. The base offense level for Count Five is 38, pursuant to Guideline § 2S1.1(a)(1), because the defendant committed the underlying offense from which the laundered funds were derived, as provided in subparagraph (b)(i) above.

vi. Two levels are added to the offense level, pursuant to Guideline § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956.

vii. Four levels are added to the offense level, pursuant to Guideline § 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants.

### Grouping

viii. Pursuant to Application Note 6 to Guideline § 2S1.1, Counts One and Five are grouped pursuant to Guideline § 3D1.2(c). Pursuant to Guideline § 3D1.3(a), the offense level applicable to the group is the highest offense level for the counts comprising the group. Therefore, the offense level is 46.

ix. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

i.      On or about March 12, 1998, defendant was convicted of conspiring to knowing and intentionally possess with intent to distribute and distribute a controlled substance in the United States District Court for the Central District of California, and sentenced to 153 months' imprisonment followed by five

years' supervised release. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this conviction.

       ii.      Pursuant to Guideline § 4A1.1(d), defendant receives 2 criminal history points because she committed the instant offense while under a criminal justice sentence, namely, a term of supervised release for the offense described above in paragraph 9(c)(i) above.

       d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 43 which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines sentence of life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that she is subject to a statutory minimum sentence of 10 years' imprisonment.

       e.      Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

      f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range and to impose a sentence within the range agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court, and that defendant remains subject to the statutory minimum sentence.

13.    If the government moves the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of no less than 10 years and no more than 15 years. Both parties shall be free to recommend any sentence within the agreed range of 10 to 15 years. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes a sentence within the agreed range of incarceration set forth above, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose a sentence within the agreed range of incarceration set forth herein, thereby rejecting

this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

14. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, this Agreement will not be governed, in any part, by Fed. R. Crim. P. 11(c)(1)(C), the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the ninth superseding indictment as to defendant.

**Forfeiture**

17. Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any

17

property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

18.     Defendant acknowledges that as part of her sentence, the Court will decide, by a preponderance of the evidence, whether the government has established the amount of a personal money judgment she must pay.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 383-19.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the ninth superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.   At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

      b.    **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction,

any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

22.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the

nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a

certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States.

23

28.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ___June 26, 2019___


_John R. Lausch Jr. by MFN_
JOHN R. LAUSCH, JR.
United States Attorney

_Guadalupe Fernandez Valencia_
GUADALUPE FERNANDEZ
VALENCIA
Defendant

~~ANDREW C. ERSKINE~~ Erika L. Csicsila
Assistant U.S. Attorney

_Ruben Oliva_
RUBEN OLIVA
Attorney for Defendant